FILED
IN CLERKS OFFICE

2015 JAN  9  PM 2 24

UNITED STATES DISTRICT COURT U.S. DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS DISTRICT OF MASS.

**DEBORAH FISHMAN POLITIS,**

    Plaintiff,

v.

**GLAXOSMITHKLINE,**

    Defendant.

Civil Action No. C.A. 1:10-cv-11773-GAO

## MOTION FOR HEARING

I, Deborah Fishman Politis am the Plaintiff in the case of DEBORAH FISHMAN POLITIS v. GLAXOSMITHKLINE, CIVIL ACTION NO. 10-11773. I received the Court's Order dated December 11, 2014 that the Defendant sent to me in hope of resolving this long-standing issue with the term sheet from mediation back in 2012.

I understand that the Court denied the Motion To Reconsider, Motion To Appoint Counsel, Defendant's Motions for sanctions, and granted the Motions To Seal.

I do not wish to vex the Court, nor the Appellate Court or the Defendant with my request for a hearing when the matter has already been decided. I would like to explain why I have circled back to this Court. I am a litigant with a disability and have been unable to work since 2008 due to compromised executive functions, the very skills required in working, in litigating, and in representing myself Pro Se.

I have put in significant efforts to hire counsel and have been unable, for various reasons, but certainly not for lack of effort. The primary obstacle is the term sheet, and should the term sheet be deemed invalid or unenforceable, representation options will increase significantly.

Upon realizing that the case with the Appellate Court will begin now that we have answers to the motions that were filed, I realized time briefs will soon be due with the Appellate Court, and I am unable to produce those myself, due to disability. However, while I am able to do without the same strain and limitation is present my position verbally and succinctly, and that is why I have reached out to request a hearing on the term sheet issue. For reasons I am unable to explain, a

A ½

verbal format is much less taxing and straining cognitively, and would allow me the opportunity to be heard.

I would like to clarify that I would not be presenting the lengthy submissions I have filed under seal. I would state a succinct and efficient argument on why the term sheet is not enforceable, and present limited evidence and some new evidence of material importance.

I sincerely apologize for my approach in this matter, especially to the Appellate Court, because in no way am I trying to circumvent the Appellate Court. I thought it would be too much to request verbal submission of briefs in order to move forward with the appeal, and since all the documentation is already filed with the District Court, I thought the chances for a hearing on a particular issue in a case that is already filed would be more likely than chances for verbal briefs, if such an accommodation would even be an option.

It has been approximately 2 years and 7 months since the Defendant and I attended mediation, and I hope we have an opportunity to address our disparate positions directly.


Respectfully submitted,


Date: January 9, 2015


DEBORAH FISHMAN POLITIS, Pro Se
59 Angelica Drive
Framingham, MA 01701
508-405-1985


cc: United States Court Of Appeals, First Circuit, Case No. 14-1263

A 2/2

**Other Orders/Judgments**

1:10-cv-11773-GAO Politis v. GlaxoSmithKline CASE CLOSED on 02/27/2014

APPEAL

**United States District Court**

**District of Massachusetts**

**Notice of Electronic Filing**

The following transaction was entered on 3/20/2015 at 11:10 AM EDT and filed on 3/20/2015
Case Name:          Politis v. GlaxoSmithKline
Case Number:        1:10-cv-11773-GAO
Filer:
WARNING: CASE CLOSED on 02/27/2014
Document Number: 62(No document attached)

Docket Text:
Judge George A. O'Toole, Jr. ELECTRONIC ORDER entered. It appearing from the
plaintiff's continued pleadings that she has resisted the entitlement order and has
failed to comply with its terms, the plaintiff is ordered to show cause within 21 days
why this case should not be dismissed with prejudice as a sanction for her failure to
comply with the order entered 2/8/14(dkt.no. 40). The [55] Motion for Hearing is
DENIED. Motions terminated: [55] MOTION for Hearing filed by Deborah Politis. (Copy
of electronic order mailed out to plaintiff)(Lyness, Paul)

1:10-cv-11773-GAO Notice has been electronically mailed to:

Michael A. Fitzhugh     mfitzhugh@fitzhughlaw.com, akury@fitzhughlaw.com,
lmhan@fitzhughlaw.com, receptionist@fitzhughlaw.com

Jeffrey R. Mazer     jrmazer@comcast.net

1:10-cv-11773-GAO Notice will not be electronically mailed to:

B

Debbie Pollis <debbiepollis@gmail.com>

## Accommodation Request

Debbie Pollis <debbiepollis@gmail.com>
To: Rob_Ferrell@mad.uscourts.gov
Bcc: "pvpdebbie@gmail.com" <pvpdebbie@gmail.com>

Fri, Apr 10, 2015 at 11:41 PM

Dear Mr Ferrell-

My name is Deborah Pollis and I am the Plaintiff in Pollis v GlaxoSmithKline, case number 1:10-cv-11773-GAO.  I am writing to you per recommendation from Jeanette McGlamery, that you are the ADA Coordinator for the District Court.

In document 59-2 I submitted to the Court a request for a hearing on the issue of the enforceability of the term sheet from mediation, and explained that my request was due to disability, that I can present my position with legal basis succinctly if done orally at the hearing.  However, the Court responded by denying the hearing request and issuing an order to show cause within 21 days or else the case will be dismissed with prejudice

I am confused why the court responded to my request for a hearing, due to disability, that I can not write briefs, and the Court responded with an order to submit a written brief and under a tight deadline.  I do not understand why I was ordered to do that which I can not do- to write a brief, and I do not understand why a hearing was denied.  I can only guess that perhaps it was my approach or error in protocol in requesting accommodations.

In any event, please find the attached letter from the disability advocate I've retained to help me thru this process of litigating Pro Se while managing and maintaining executive functioning  The 21 day deadline I believe expires today, and at minimum, wanted to introduce my advocate via the attached letter, and to request an evidentiary hearing rather than a brief, due to a disability  if medical information is needed, please let me know.  I've been receiving social security disability income since 2008, and assume that the Court will accept my disability status since the Disability Determination experts at Social Security Agency determined and approved my disability status

Sincerely,

Debbie Pollis

4-9-15 Pollis Disability Advocate.docx
31K

C 1/4

Debbie Politis <debbiepolitis@gmail.com>

## Accommodation Request

Debbie Politis <debbiepolitis@gmail.com>
To: rob_ferrell <rob_ferrell@mad.uscourts.gov>

Tue, Apr 14, 2015 at 2:37 PM

Hello Mr. Ferrell-

I had emailed you on Friday April 10th and wanted to make sure you got my email below. It's a serious issue to miss a show cause deadline, and I hope we can work out a solution together so that we remove the barrier due to disability and so that I can be heard on the issue via an evidentiary hearing.

Sincerely,

Deborah Politis

---------- Forwarded message ----------
From: Debbie Politis <debbiepolitis@gmail.com>
(Quoted text hidden)

4-9-15 Politis Disability Advocate.docx
31K

Debbie Politis <debbiepolitis@gmail.com>

## Letter to Judge O'Toole

Debbie Politis <debbiepolitis@gmail.com>
To: paul_lyness@mad.uscourts.gov
Bcc: "gakcase@gmail.com" <gakcase@gmail.com>

Mon, Apr 20, 2015 at 10 09 AM

Dear Paul-

My name is Deborah Politis, the Plaintiff in Politis v GlaxoSmithKline Civil Action # 10-11773.  The Court had ordered me to show cause within 21 days or else the case would be dismissed.  I was unable to meet the deadline due to disability, and per direction from the Pro Se Desk, I submitted accommodation requests, just under the 21 day expiration to show cause, and sent it to the ADA coordinator.

I went to send a letter to Judge O'Toole that I did so, so that there's no misperception that I ignored the deadline, when I was cognizant of it but couldn't meet it due to disability.  I will be submitting formal accommodation requests when I hear back from the ADA coordinator.  I've reached out twice so far.

Can I send a letter to Judge O'Toole directly?  Is this allowed?  I was told it was but want to check with you to be sure it is ok to do so.

Sincerely,

Deborah Politis

C 3/4

# MS. DEBORAH FISHMAN POLITIS

59 ANGELICA DRIVE • FRAMINGHAM, MASS~~FILED~~ • ~~ACHUSETTS~~01701 • 508-485-1985

FILED
IN CLERKS OFFICE

2015 APR 23  PM 1 54

U.S. DISTR..  ..........
DISTRICT OF  ...ASS.

April 20, 2015

Honorable Judge George O'Toole, Jr.
United States District Court
District Of Massachusetts
John Joseph Moakley U.S. Courthouse
1 Courthouse Way – Suite 2300
Boston, MA 02210

Dear Judge O'Toole:

This letter is to inform the court that since the end of August 2014, I have been representing myself. I now stand in the shoes of an attorney and request the same courtesies shown to attorneys, the same professional avenues and must be noticed on all matters as noticed to my past attorney, so that I am allowed equal access to all actions and proceedings.

I have been receiving disability income from the Defendant, my former employer GlaxoSmithKline, since 2008 and Social Security Disability Income for years. As such, the Government's own experts at the Social Security Agency's Disability Determination Services have declared me as disabled, and am therefore qualified according to the Federal Government under the Americans With Disabilities Act. I will be filing for appropriate accommodations for Federal Court and the Appellate Court. I have now reached out on two occasions to the ADA coordinator of this court, once just prior to the expiration of the 21 days to show cause, requesting accommodations and have reached out a second time. I imagine the accommodation process will take some time. I just wanted to let you know that I did not ignore the order of the court, and wanted to make sure there's no misunderstanding or perceived disrespect because the issue is about getting my disability accommodated so I can access the court.

In the meantime, I will need some time to complete the tasks referenced above. I waive nothing and intend that all protections stay in-tact as I assume this arduous role as a Pro Se litigant with a disability.

Due to the situation of the case, I am told to motion the court for subpoenas. The documents that are being withheld by certain parties and individuals are at high risk of being destroyed and wish to ask the Court's permission to obtain subpoenas without motioning the court, which would notify parties of my intent and cause higher risk of destruction of evidence. The documents are essential to show cause, to include in the appeal, and critical in order to correct the record so that it reflects a full, fair and accurate development of the record. May I please have permission to obtain subpoena forms and procedures from the clerk's office?

Sincerely,

Deborah Politis

C 4/4

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

### CIVIL ACTION NO. 10-11773-GAO

**DEBORAH POLITIS,**
**Plaintiff,**

v.

**GLAXOSMITHKLINE,**
**Defendant.**

### ORDER
April 27, 2015

O'TOOLE, D.J.

In light of the plaintiff's failure to comply with the Order Enforcing Settlement Agreement (dkt. no. 40) entered over a year ago, on March 20, 2015 this Court ordered the plaintiff to show cause (dkt. no. 62) why this case should not be dismissed with prejudice as a sanction for her noncompliance. The plaintiff submitted a letter to this Court two weeks after the show cause deadline, noting her disability and need for accommodations. The letter does not explain the plaintiff's continued failure to comply with the settlement order and offers no legal reason why the case should continue in this Court. Moreover, the Court is well aware of the facts of the plaintiff's situation and has given her ample opportunity to comply with its orders.

The plaintiff having shown no indication that she means to comply with the settlement agreement as ordered, this case is DISMISSED with prejudice.

Judgment shall enter accordingly.

/s/ George A. O'Toole, Jr.
United States District Judge

D ½

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

Deborah Pollitt,
　　　　　Plaintiff,

v.

GlaxoSmithKline,
　　　　　Defendant.

CIVIL ACTION NO. 10-11773-GAO

### JUDGMENT OF DISMISSAL

O'Toole   D.J.

In accordance with the Court's Order (dkt. no. 64) dated 4/27/2015, it is hereby
ORDERED that the above-entitled action be and hereby is DISMISSED with prejudice.

4/27/2015
Date

By the Court,

/s/Christopher Danieli
Deputy Clerk

D 2/2



**U.S. Department of Justice**

Office of Justice Programs

*Office for Civil Rights*

*Washington, D.C. 20531*

**Via Certified Mail**

August 31, 2011

Ellen J. Frank
Executive Director
Executive Office of Public Safety
Office of Grants and Research
10 Park Plaza, Ste. 3720
Boston, MA 02116

Re: Massachusetts Executive Office of Public Safety and Security
     Docket No. 09-OCR-0078

Dear Executive Director Frank:

On June 18, 2007, the Office for Civil Rights (OCR), Office of Justice Programs (OJP), U.S. Department of Justice (DOJ) initiated a compliance review of all State Administering Agencies. including the Massachusetts Executive Office of Public Safety (EOPS), in accordance with federal regulation 28 C.F.R. ' 42.206. The focus of the review was on the EOPS's compliance with applicable federal civil rights laws along with its monitoring procedures for ensuring that subrecipients are complying with these laws. Of particular interest to the OCR was the EOPS's implementation and monitoring of the DOJ regulation, Equal Treatment for Faith-Based Organizations, 28 C.F.R. pt. 38 [hereinafter Equal Treatment Regulations].

In our letter dated June 18, 2007, we included a request for information in the form of a Data Request which inquired about the EOPS monitoring practices in the above-noted areas. The EOPS' Office of Grants and Research (OGR), responded to our Data Request in August 2007, and per our request, former Executive Director Sandra McCroom provided an updated data response in a letter dated April 1, 2009. On May 6-7, 2009, the OCR conducted an onsite visit to the EOPS located in Boston, Massachusetts to interview EOPS and OGR administrators and to conduct a training program for administrators and program staff on the federal civil rights laws the OCR enforces.

On April 20, 2011, the OCR sent the EOPS a draft copy of our Compliance Review Report (Report) and requested the EOPS review the Report and notify the OCR of any factual

E

Ellen Frank. Executive Director
Executive Office of Public Safety
Office of Grants and Research
August 31, 2011
Page 2

inaccuracies within thirty days from April 20, 2011. As the OCR did not hear from the EOPS within that timeframe, we are issuing the Report as final at this time. Finally, on August 12, 2011, Greg Massing, EOPS General Counsel, contacted OCR Attorney ████████ to confirm the EOPS delayed receipt of the draft Report and to advise that the EOPS will provide the OCR a detailed memorandum outlining the steps the EOPS will take to implement the recommendations contained within this Report no later than September 30, 2011. By December 30, 2011, Mr. Massing advised that the EOPS would complete its implementation of all steps necessary to satisfy the recommendations contained within this Report.

Based on the EOPS response to our data request and the information the OCR gathered during, and subsequent to, our onsite visit, we conclude, in regard to the limited scope of our review, the EOPS is not fully compliant with the federal civil rights laws and regulations the OCR enforces. At this time, we have reservations about whether the EOPS has adequate complaint procedures in place to respond to discrimination complaints from beneficiaries and employees of subrecipients, and whether it is sufficiently monitoring subrecipients for compliance with applicable federal civil rights laws and regulations, and training and educating its subrecipients on those laws and regulations. The following Report includes recommendations for improving the EOPS's methods for monitoring the civil rights compliance of subrecipients and developing complaint procedures to address discrimination complaints received from employees or beneficiaries of subrecipients to ensure compliance with applicable federal civil rights laws.

**Compliance Review Report: Overview and Recommendations**

I.   **Overview**

This Report first examines the EOPS's procedures for monitoring whether subrecipients are meeting their obligations to comply with the federal civil rights laws that are a condition for receiving federal financial assistance. The Report then focuses on the EOPS's implementation of the DOJ's Equal Treatment Regulations.

    A.   General Monitoring Procedures to Ensure Subrecipient Compliance with Applicable Federal Civil Rights Laws

Recipients of federal financial assistance from the OJP are responsible for certifying that contractors and subrecipients under DOJ grant programs comply with applicable federal civil rights laws. In reviewing the EOPS's general efforts to ensure subrecipients compliance with civil rights obligations, the OCR examined how the EOPS used the following four tools: (1) standard assurances, (2) onsite visits and other monitoring methods, (3) training programs and technical assistance, and (4) procedures for receiving, investigating, and resolving complaints alleging discrimination in the delivery of services.

Ellen Frank, Executive Director
Executive Office of Public Safety
Office of Grants and Research
August 31, 2011
Page 3

### 1.    Standard Assurances

At the time of our visit, the EOPS received grant awards from the following DOJ program offices: the Bureau of Justice Assistance (BJA), the Office on Violence Against Women (OVW), Bureau of Justice Statistics (BJS), and the Office of Juvenile Justice and Delinquency Prevention (OJJDP). The OGR is responsible for managing the DOJ awards on behalf of the EOPS.

In its data response, the EOPS cited eight different contract documents that subrecipients must endorse prior to receiving federal grant funds. Of those documents, three are specifically relevant to this review and reference, in varying degrees, applicable federal civil rights laws with which subrecipients must comply. The following three documents, which the OGR explained to the OCR during our onsite review, are used to ensure subrecipient notification and compliance with federal civil rights laws: "Commonwealth of Massachusetts Standard Contract Form," "Certification of Compliance with Regulations," and "Commonwealth Terms and Conditions." The Standard Contract Form, which the OGR stated is akin to OJP's Standard Assurances, must be signed and returned before the release of DOJ funds. This document contains the following paragraph addressing federal civil rights laws and reads as follows:

> Federal And State Laws And Regulations Prohibiting Discrimination including but not limited to the Americans with Disabilities Act 42 U.S.C. Sec. 12,101 et seq., Disability Law Resources; the Rehabilitation Act, 29 USC c. 16s. 794; 29 USC c. 16. S. 701; 29 USC c. 14, 623; the 42 USC c. 45; (Federal Fair Housing Act; G.L. c. 151B (Unlawful Discrimination); G.L. c. 151E (Business Discrimination); the Public Accommodations Law G.L. c. 272, s. 92A; G.L. c. 272 s. 98 and G.L. 272 s. 98A; the Massachusetts Constitution Article CXIV and G.L. c. 93, s. 103; 47 USC c. 5, sc II, Part II. S. 255 (Telecommunications Act; Chapter 149, Section 105D. G.L. c 151C G.L. c. 272, Section 92A, Section 98 and Section 98A, and G.L. c. 111, Section 199A, and Massachusetts Disability-Based Non-Discrimination Standards for Executive Branch Entities, and related Standards and Guidance, authorized under Massachusetts Executive Order 478 or any disability-based protection arising from state or federal law or precedent.  See also MCAD and MCAD links and Resources;[1]

The second document the EOPS, OGR requires subrecipients to sign and submit prior to the dissemination of DOJ funds is entitled, "Certification of Compliance with Regulations" (Certification of Compliance). The Certification of Compliance contains the following paragraphs regarding federal civil rights laws which read as follows:

---

[1] The OCR has omitted in this recitation the bold, italic and underline fonts contained in the original document. Also, please note the correct citation to the following federal statutes is as follows:  The Rehabilitation Act of 1973 29 U.S.C. § 794 and the Americans with Disabilities Act of 1990 (42 U.S.C. § 12131-34).

Ellen Frank, Executive Director
Executive Office of Public Safety
Office of Grants and Research
August 31, 2011
Page 4

I.      REQUIREMENTS OF SUBGRANT RECIPIENTS:  All subgrant recipients
(regardless of the type of entity or the amount awarded) are subject to prohibitions
against discrimination in any program or activity, and must take reasonable steps
to provide meaningful access for persons with limited English proficiency.[2]

I certify that this agency will ensure that:  our services are delivered in an
equitable manner to all segments of the service population as required by law; our
employment practices comply with Equal Opportunity Requirements, 28 CFR
42.207 and 42.301 et seq.[3]

I also certify that the agency will submit findings, if any, of discrimination by a
state or federal court or administrative body to the Executive Office of Public
Safety, Office of Grants and Research within 45 days of the finding, and/or if the
finding occurred prior to the grant award beginning date, within 45 days of the
grant award beginning date.  A copy of this Certification will be provided to this
person, as identified here:[4]

[Signatory line for person responsible for reporting civil rights findings of
discrimination].

II.     EQUAL EMPLOYMENT OPPORTUNITY PLAN (EEOP) CERTIFICATIONS:
Check the box before ONLY THE ONE APPROPRIATE CERTIFICATION (A,
B, C or D below) that applies to this subgrantee agency during the period of the
anticipated grant duration noted above.[5]

The third document referencing compliance with federal nondiscrimination laws and which
EOPS  subrecipients must endorse prior to the dissemination of federal funding is entitled,

---

2 Please see Section II(C) of this Report for the legal standards that enforce this requirement and which the OGR
should cite when restating this requirement, and for a fuller discussion of the model language the OCR recommends
the OGR include in all assurance documents.
3 Please note that the actual name of this program is, "The Equal Employment Opportunity Program." Additionally,
the correct legal citation to the Equal Employment Opportunity Program regulations should read as follows:  28
C.F.R. §§ 42.301-.308.
4 Please note that the legal citation to the DOJ regulation requiring the submission of findings is as follows:  28
C.F.R. § 31.202 (b) (5) and 28 C.F.R. § 42.204.
5 For the sake of brevity, the OCR has not provided a full recitation of the EEOP Certification provided by the
OGR.  However, the EEOP Certification developed by the OGR models the EEOP Certification required by the
OCR in that it requests each subrecipient to select one of the following three options with regard to an EEOP
pursuant to 28 C.F.R. §§ 42.301-.308 :  1)  EEOP is not required, 2) EEOP must be maintained on file for
inspection, or 3) EEOP must be submitted to the OCR for review.  Please find attached a copy of the OGR's EEOP
Certification, originally indexed as Attachment E in the BOPS's data response.

Ellen Frank, Executive Director
Executive Office of Public Safety
Office of Grants and Research
August 31, 2011
Page 5

"Commonwealth Terms and Conditions," and contains the following clause located in paragraph 10 of that document:

> 10. Affirmative Action, Non-Discrimination In Hiring and Employment
> The Contractor shall comply with all federal and state laws, rules and regulations promoting fair employment practices or prohibiting employment discrimination and unfair labor practices and shall not discriminate in the hiring of any applicant for employment nor shall any qualified employee be demoted, discharged or otherwise subject to discrimination in the tenure, position, promotional opportunities, wages, benefits or terms and conditions of their employment because of race, color, national origin, ancestry, age, sex, religion, disability, handicap, sexual orientation or for exercising any rights afforded by law. The Contractor commits to purchasing supplies and services from certified minority or women-owned businesses, small businesses or businesses owned by socially or economically disadvantaged persons or persons with disabilities.[6]

In addition to the above-noted documents, shortly after our onsite visit, the OGR provided the OCR a draft copy of a new document that is intended to supplement the Standard Contract Form and is entitled, "General Subrecipient Grant Conditions." The OGR explained that this document was drafted as a result of the OCR's compliance review notice and with the intention of including a specific reference to the Equal Treatment Regulations. In addition to containing the same exact clause contained in the Commonwealth of Massachusetts Standard Contract Form and cited above, the draft document contains the following reference on page 3 of the that document dated April 20, 2009, which reads as follows:

> Equal Treat for Faith-Based Organizations
>
> > o 28 CFR Part 38-These requirements apply to faith-based organizations with regard to non-discrimination enumerated in 28 CFR Part 38:
> > http://frwebgate.access.gpo.gov/cgi-bin/get-cfr.cgi.

Although there are some legal clauses contained within the Standard Contract Form and the Certification of Compliance, there are several instances in which applicable civil rights laws or requirements are not referenced or may be expanded upon. Specifically, the Commonwealth's Standard Contract Form does not reference the Equal Treatment Regulations. However, to remedy this oversight, the OGR proactively developed the draft document, General Subrecipient Grant Conditions, in order to specifically reference the Equal Treatment Regulations. As noted above, however, this document was in draft form at the time of our visit. Also, subsequent to our

---

6 The OCR has omitted in this recitation the bold, italic and underline fonts contained in the original document.

Ellen Frank, Executive Director
Executive Office of Public Safety
Office of Grants and Research
August 31, 2011
Page 6

onsite visit, the OCR attempted to access the hyperlink contained in the document, but received an error message stating the webpage was not longer available.

Additionally, although the Certification of Compliance does contain the requirement that subrecipients must submit findings to the EOPS, OGR, it does not, however, instruct subrecipients to also submit findings to the OCR, nor does it include a reference to the legal citation for this requirement which we have included in footnote 4 of this Report. Similarly, although the Certification of Compliance addresses the requirement to ensure meaningful access to individuals who are considered limited English proficient (LEP), we recommend referencing the applicable legal standards for this requirement which we have referenced in Section II (C) of this Report. Finally, the draft General Subrecipient Grant Conditions, the Standard Contract Form, and the Certification of Compliance, all either omit or contain incorrect legal citations to applicable federal civil rights laws which again we have outlined for your reference in Section II (C) of this Report.

2.    Onsite Visits and Other Monitoring Methods

In its initial data response, the EOPS stated that it monitors the compliance of its subrecipients with applicable federal civil rights obligations by requiring them to complete the above-referenced award documents. While onsite, the OCR inquired as to whether the EOPS monitored its subrecipients in any other fashion besides the noted award documents. In response, the OGR explained that grant managers may occasionally select subrecipients for onsite monitoring if the OGR has concerns with a subrecipient complying with financial or programmatic conditions of the grant or if the subrecipient is newly awarded. However, the OGR stated that the onsite monitoring does not inquire as to whether the subrecipient is complying with applicable federal civil rights laws and acknowledged there "is some gaps" in the EOPS monitoring of subrecipients for compliance with these laws.

3.    Training and Technical Assistance

In its data response, the OGR stated it hosts grant management workshops on a routine basis for subrecipients during which the OGR discusses the Certification of Compliance award document. The OGR went on to state in its response that its staff was available to discuss compliance questions with subrecipients when necessary or to serve as a liaison between the subrecipient and the OCR.

During the onsite review, the OCR attempted to gather additional specific information about the grant management workshops to include when they were offered, how attendees were selected, and whether applicable federal civil rights laws were specifically discussed during the workshops. In response, we were informed by former OGR Executive Director Sandra McCroom, that the workshops had not occurred since at least 2007.

Ellen Frank, Executive Director
Executive Office of Public Safety
Office of Grants and Research
August 31, 2011
Page 7

4.   Complaint Procedures

At the time of our visit, the EOPS did not have any formal written procedures in place to address either employment or services discrimination complaints received from employees or beneficiaries of its subrecipients. In its data response, the EOPS stated any discrimination complaints received from employees or beneficiaries of its subrecipient, or other members of the public, would be referred to either the EOPS General Counsel or the Executive Director of the OGR for review.  When the OCR inquired about the review process for complaints of this type, the OGR stated no formal process exists, but would work with EOPS General Counsel to develop a complaint process of this type.

In its Data Request response, and also at the time of our onsite visit, the OGR staff stated they were not aware of an employee or beneficiary of a subrecipient ever filing a discrimination complaint against a subrecipient.

B.   Monitoring Compliance with Faith-Based Regulations

The purpose of the Equal Treatment Regulations is to ensure that "[r]eligious organizations are eligible, on the same basis as any other organization, to participate in any [Justice] Department program for which they are otherwise eligible." See § 28 C.F.R. 38.1(a).  The Regulations prohibit the DOJ and its funding recipients from discriminating either for or against an organization on the basis of the organization's religious character or affiliation. Id. In evaluating the EOPS's treatment of faith-based organizations, this Compliance Review focuses on two issues:  (1) the review process for making awards to applicant faith-based organizations; and (2) procedures for ensuring that funded faith-based organizations comply with applicable federal civil rights laws.

1.   The Process for Making Awards to Applicant Faith-Based Organizations

The EOPS, OGR solicits funding applications through its open public grant award process which is regulated per the Commonwealth of Massachusetts, Office of the Comptroller, 815 CMR 2.00 and entitled, "MMARS Policy:  State Grants and Federal Sub-Grants." To initiate the grant award process upon notice of receipt of DOJ grant funds, the OGR will establish any eligibility criteria and timelines for announcement and submission of application for the grant award.  The OGR then provides public notice of the upcoming funding opportunity to prospective subgrantees to include faith-based organizations.  To elaborate, all funding opportunities are announced on the EOPS website and a notice of the award is also sent to all possible subrecipients by way of e-mail.  In that e-mail, the EOPS, OGR requests each subrecipient

Ellen Frank, Executive Director
Executive Office of Public Safety
Office of Grants and Research
August 31, 2011
Page 8

forward the announcement to any other organizations they believe may be interested in the funding opportunity. Finally, an announcement of the award is placed in the EOPS's newsletter.

Within seven days of the initial announcement of the upcoming grant award, the OGR hosts a "bidders conference" for prospective subgrantees. At this meeting, which is not mandatory, the OGR discusses both the financial and programmatic requirements[7] of the award as well as the contract documents that each subrecipient must sign upon notification of receiving an award and prior to the dissemination of DOJ grant funds. The EOPS has placed all of this information on its website for easy access and review by prospective subrecipients who are unable to attend the bidders conference.

Upon receipt of the subgrantee applications for funding, an OGR grant manager organizes all grant applications, assembles grant reviewers to include both in-house staff and volunteer reviewers selected from the community, and then convenes review panels that begin reviewing each grant application. The review panels ensure each application has satisfied all the requirements of the award announcement such as providing a description of the project to be funded with the grant award and an itemization of how the funds will be allocated. After each review panel has selected possible awardees, the panels then memorialize their comments and recommendations into a memo for review by the Secretary of the EOPS. The Secretary of EOPS has the final decision making authority as to the subrecipient(s) selected to receive the award. The Secretary also has the authority to adjust the amount of the award or the recommended subrecipient based on a particular need within the Commonwealth they may be aware of. The Secretary of EOPS then notifies OGR of his or her final selection at which time the OGR announces the selected subrecipients and notifies each by way of telephone and letter. Finally, the OGR stated in its data response, that it does not require any of its nonprofit applicants, including faith-based organizations, to claim federal tax exempt status under 26 U.S.C. § 501(c)(3).[8]

In its supplemental data response dated April 1, 2009, the OGR stated it had identified six subrecipient faith-based organizations that had received subawards from the EOPS.[9] The OGR qualified its response by stating that it does not ask faith-based organizations to self-identify their

---

7 While onsite, the OGR stated the bidder's conference does not include a discussion of applicable federal civil rights laws that attach to subrecipients of federal funding when they accept the grant award.

8 Please note that the JJDPA, Pub.L. 93-415, 42 U.S.C. § 5601 et seq., requires nonprofit organizations funded under that statute to obtain tax exempt status under 26 U.S.C. § 501 (c)(3). The OCR understands that some of the EOPS's grants from the DOJ are authorized under the JJDPA. The OCR recommends the EOPS, OGR contact its named grant advisor at the DOJ, OJP to discuss this requirement.

9 These organizations are as follows: Third Sector New England, Inc., Children's Law Center, Catholic Charities Archdiocese of Boston, Black Ministerial Alliance, YMCA, and the Boston Tenpoint Leadership Foundation. The OCR did not visit the faith-based organizations while onsite as the OGR notified the OCR that all six organizations had drawn down all allocated funds as of January 15, 2009 and were no longer funded by the EOPS.

Ellen Frank, Executive Director
Executive Office of Public Safety
Office of Grants and Research
August 31, 2011
Page 9

status and the OGR believed the six subrecipients to be faith-based organizations solely based on the name of the entity.

> 2.    Procedures for Ensuring that Faith-Based Organizations Comply with
>         Applicable Federal Civil Rights Laws

The OGR also stated during the OCR's onsite visit that it does not currently have any procedures in place to ensure that prospective subrecipient faith-based organizations are complying with the applicable civil rights laws.

As discussed in Section I (A)(1) of this Report, the OGR may select subrecipients for monitoring visits, but the focus of the visits is to ensure compliance with the financial and programmatic terms of the grant award and not compliance with federal civil rights requirements to include faith-based organizations' compliance with the Equal Treatment Regulations. As noted previously, the OGR did provide the OCR with a draft copy of EOPS's General Subrecipient Grant Conditions which the OGR revised upon notice of our compliance review to include a reference to the Equal Treatment Regulation.

## II.    Recommendations

The EOPS currently has minimal procedures in place for monitoring the civil rights compliance of its subrecipients. To strengthen the monitoring efforts of the EOPS, we offer the following six recommendations: (1) develop a comprehensive policy, including the establishment of written procedures, for addressing discrimination complaints; (2) add a citation referring to DOJ's Equal Treatment Regulations to its Standard Subgrant Conditions and grant application guidelines; (3) include information on all of the applicable federal civil rights laws and requirements in its assurance and award documents; (4) monitor subrecipients for compliance with federal civil rights laws during annual onsite monitoring visits; and (5) provide training to subrecipients on their obligations to comply with federal civil rights laws.

> A.    Develop Comprehensive Policy for Addressing Discrimination Complaints

While the EOPS did express some idea of what steps it may take if it receives an employment discrimination complaint, it did not have any explicit procedures in place which address how to process complaints of discrimination from EOPS beneficiaries or for addressing discrimination complaints from employees or beneficiaries of EOPS subrecipients. Accordingly, the EOPS should adopt a policy for addressing discrimination complaints that includes, at a minimum, the following elements:

Ellen Frank, Executive Director
Executive Office of Public Safety
Office of Grants and Research
August 31, 2011
Page 10

    1) designate a coordinator who is responsible for overseeing the complaint process;[10]

    2) notify employees of the EOPS, beneficiaries, and subrecipients of prohibited discrimination in funded programs and activities and the EOPS policy and procedures for handling discrimination complaints;[11]

    3) establish written procedures for receiving discrimination complaints from the EOPS beneficiaries, and from subrecipient employees and beneficiaries;

    4) refer each complaint to the appropriate agency for investigation and resolution, such as the EEOC; or referring the complaint to the OCR, which will review the complaint and work with the EOPS to resolve the complaint;

    5) notify the OCR in writing when the EOPS refers a discrimination complaint to another agency or when the EOPS investigates the complaint internally; and

    6) train EOPS program staff on their responsibility to refer discrimination complaints, or potential discrimination issues, to the EOPS complaint coordinator for processing as soon as the alleged discrimination comes to their attention.

Information about the applicable laws, complaint forms, and the investigative process may be found at the OCR's website at www.ojp.usdoj.gov/ocr/crc. Developing a comprehensive policy for addressing discrimination complaints should be a top priority for the EOPS. To assist the EOPS in the drafting process, we have developed, and provide for your consideration, sample procedures for addressing how to process complaints of discrimination from subrecipient employees and beneficiaries.

    B.    Add a Citation Referring to the Faith-Based Regulations to the General Subrecipient Grant Conditions, Certification of Compliance with Regulations, and Grant Application Guidelines

The EOPS should be sure to include a reference to the DOJ's Equal Treatment Regulations, 28 C.F.R. pt. 38, in its General Subrecipient Grant Conditions, Certification of Compliance, and to any DOJ grant application documents that may reference prospective faith-based organizations.[12]

---

10 *See* 28 C.F.R. § 31.202 (a)(1).

11 *Id.* at 31.202 (b)(3).

12 While onsite, the EOPS General Counsel explained to the OCR that alterations to the Commonwealth's Standard Contract Form would be near impossible because it was a form produced by the Commonwealth thus, making editorial changes not only arduous but near impossible to secure. However, to circumvent this obstacle and to ensure a reference to the Equal Treatment Regulations, the OGR the EOPS General Counsel proposed referencing the Equal Treatment Regulation in the OGR's General Subrecipient Grant Conditions. As noted previously, the

Ellen Frank, Executive Director
Executive Office of Public Safety
Office of Grants and Research
August 31, 2011
Page 11

Subrecipients receiving funding from DOJ components need to be aware of the obligation to comply with these regulations.

C.    Include Reference to Civil Rights/Nondiscrimination Provisions in the EOPS Standard Subgrant Conditions

The EOPS should include a full and accurate reference to all of the federal civil rights laws the OCR enforces and that subrecipients are required to comply with in the documents noted in Section I (A)(1) of this Report and which contain the assurance and condition that subgrantees must sign when applying for, and receiving federal grant awards.  To that end, the EOPS should incorporate, at a minimum, the following language in all DOJ subrecipient assurance documents regardless of the amount of the federal financial assistance at issue:[13]

> It will comply (and will require any subgrantees or contractors to comply) with any applicable statutorily-imposed nondiscrimination requirements, which may include the Omnibus Crime Control and Safe Streets Act of 1968 (42 U.S.C. § 3789d); the Victims of Crime Act (42 U.S.C. § 10604(e)); the Juvenile Justice and Delinquency Prevention Act of 2002 (42 U.S.C. § 5672(b)); the Civil Rights Act of 1964 (42 U.S.C. § 2000d); the Rehabilitation Act of 1973 (29 U.S.C. § 794); the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12131-34); the Education Amendments of 1972 (20 U.S.C. §§ 1681, 1683, 1685-86); the Age Discrimination Act of 1975 (42 U.S.C. §§ 6101-07); Ex. Order 13279 (equal protection of the laws for faith-based and community organizations); and 28 C.F.R. pt. 38 (U.S. Department of Justice Equal Treatment for Faith-Based Organizations).

> In the event a Federal or State court or Federal or State administrative agency makes a finding of discrimination after a due process hearing on the grounds of race, color, religion, national origin, sex, or disability against a recipient of funds, the recipient will forward a copy of the finding to the Office for Civil Rights, Office of Justice Programs and to the Executive Office of

---

OGR provided the OCR a draft copy of this document which includes a reference to the Equal Treatment Regulation and which each subrecipient is required to endorse and return to the OGR prior to the release of DOJ grant monies.
13 As discussed in Section I(A)(1) of this Report, the OGR has already included the bulk of this language in the Certification of Compliance, however, to ensure uniformity in assurance documents issued by the OGR to all subrecipients, we recommend the OGR modify the existing language contained in the Certification of Compliance to address the concerns we noted in Section I(A)(1) of this Report and to reflect the model language the OCR has set forth here.

Ellen Frank, Executive Director
Executive Office of Public Safety
Office of Grants and Research
August 31, 2011
Page 12

Public Safety (EOPS), Office of Grants and Research (OGR).

It will provide an Equal Employment Opportunity Plan (EEOP) to the Office for Civil Rights, Office of Justice Programs and the, if required to maintain one; otherwise, it will provide a certification to the Office for Civil Rights, Office of Justice Programs and the EOPS, OGR that it has a current EEOP on file, if required to maintain one. For grantee agencies receiving less than $25,000; or grantee agencies with less than 50 employees, regardless of the amount of the award, no EEOP is required.

Information about civil rights obligations of grantees can be found at http://www.ojp.usdoj.gov/ocr/.

Also, the EOPS should expand upon the existing provision in the Certification of Compliance which requires its subrecipients to certify they will provide meaningful access to their programs and activities to LEP persons to include the following references to the applicable legal authority for this requirement: Title VI of the Civil Rights Act of 1964 and the Omnibus Crime Control and Safe Streets Act of 1968. For a detailed discussion of the requirement to provide meaningful access to LEP persons, please review the guidance issued by the DOJ on this matter entitled, "Guidance to Federal Financial Assistance Recipients Regarding Title VI Prohibition Against National Origin Discrimination Affecting Limited English Proficient Persons," 67 Fed. Reg. 41,455 (June 18, 2002).

Finally, the EOPS may wish to add a sentence stating that in accordance with federal civil rights laws, the subrecipient shall not retaliate against individuals for taking action or participating in action to secure rights protected by these laws.

D.     Monitor for Compliance with Federal Civil Rights Laws during Onsite Monitoring Visits

The EOPS should ensure DOJ subrecipients comply with grant requirements. Pursuant to its responsibility to monitor the compliance of subrecipients with applicable federal civil rights laws, the OGR should broaden the scope and basis for selecting subrecipients for monitoring to include monitoring for civil rights compliance. Specifically, the OGR should evaluate its subrecipients for compliance with all civil rights requirements that are binding on recipients of federal funding (e.g., whether the subrecipient has a grievance procedure and a designated coordinator as required by section 504 of the Rehabilitation Act and Title IX of the Education Amendments of 1972). Also, the EOPS should be sure to monitor whether the subrecipient is complying with DOJ's Equal Treatment Regulations, including the prohibitions against using

Ellen Frank. Executive Director
Executive Office of Public Safety
Office of Grants and Research
August 31, 2011
Page 13

federal funds to engage in inherently religious activities and discriminating against program
beneficiaries on the basis of religion.

To assist the EOPS, OGR in strengthening its onsite monitoring procedures. please find enclosed
a monitoring checklist which was developed by the OCR and addresses the applicable federal
civil rights laws and requirements that an SAA should monitor its subrecipients for compliance.

E.   Provide Training to Subrecipients on Their Obligations to Comply with Federal
     Civil Rights Laws

At the time of our visit. and dating back to 2007, the OGR was not providing any training for its
subrecipients on compliance with applicable civil rights obligations. To ensure subrecipients are
aware of their obligations under federal civil rights laws. we strongly recommend the OGR
provide periodic training programs for its subrecipients on the applicable federal civil rights
laws. Training of this type should be for every subrecipient and offered at least once during a
grant cycle. whether the OGR provides the training in person. during a teleconference. or
through other means. The OCR is available to provide the OGR with technical assistance in
developing civil rights training programs.

Conclusion

The EOPS should implement the recommendations set forth in the Report to ensure substantial
compliance with the federal civil rights laws the OCR enforces. On request. the OCR is available
to provide technical assistance to the EOPS in addressing the concerns raised in the Report. As
previously noted in this Report and as conveyed by Greg Massing. EOPS General Counsel. the
EOPS will provide the OCR a detailed memorandum outlining the steps the EOPS will take to
implement the recommendations contained within this Report no later than September 30. 2011.
By December 30. 2011. Mr. Massing advised that the EOPS would complete the implementation
of all steps necessary to satisfy the recommendations contained within this Report.

Thank you for your cooperation and the assistance of your staff throughout the compliance
review process. If you have any questions, please contact ███████ electronically at
█████████████ or by telephone at ██████████████

Sincerely.

Michael L. Alston
Director

Ellen Frank, Executive Director
Executive Office of Public Safety
Office of Grants and Research
August 31, 2011
Page 14


cc:     Greg Massing, General Counsel
        Executive Office of Public Safety & Security
        One Ashburn Place, Room 2133
        Boston, MA 02108

Enclosures